## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RODNEY A. HURDSMAN and**
**WILLIE FLEETWOOD**                                                    **PLAINTIFFS**

**v.**                              **No. 4:09-cv-892-DPM**

**JAMES L. SALKELD, Director of the**
**Arkansas Department of Labor and Workforce**
**Education and Arkansas Board of Electrical Examiners;**
**RONALD E. BAKER, ADOL/WE employee,**
**Administrator to the Arkansas Board of**
**Electrical Examiners, and Committee**
**member of the State Electrical Apprenticeship**
**Committee; RONALD L. CLARK, ADOL/WE**
**employee; JONATHAN BIBB, ADOL/WE employee;**
**CHARLES COVINGTON, Arkansas Board of**
**Electrical Examiners staff member and Chief**
**Electrical Inspector for the State of Arkansas;**
**GARY FERREL, Chairman of the Arkansas Board**
**of Electrical Examiners; DANNY KING,**
**Arkansas Board of Electrical Examiners**
**board member; DAN MCALISTER, Chairman,**
**State Electrical Apprenticeship Committee;**
**HARRY CHAPLE, State Electrical Apprenticeship**
**Committee, Committee member; KENNETH**
**LAMKIN, Arkansas State Director, United States**
**Department of Labor, Bureau of Apprenticeship**
**Training and State Electrical Apprenticeship Committee;**
**and LEE DANNER, United States Department**
**of Labor/Bureau of Apprenticeship Training employee;**
**individually and in their official capacities**                **DEFENDANTS**

## ORDER

An Arkansas Rule reducing the experience credits granted to federal inmates participating in an electrical-apprentice program prompted this case. Everything about it is knotty—the procedural history, the facts, and the claims. The many parties, though, do not dispute the essential facts. And the claims, once unraveled, present matters of law. The short version is this: though the Plaintiffs—Hurdsman and Fleetwood—got the runaround and were treated unfairly, no violation of federal law occurred; and their state-law claim is dismissed without prejudice.

**1. The Background.**   Rodney Hurdsman and Willie Fleetwood completed an 8,000-hour electrical apprenticeship training during their incarceration at the Federal Correctional Institution at Forrest City, Arkansas. Hurdsman discovered, after applying to sit for the licensing exam, that the state licensing board had cut more than 6,000 hours of his experience credit. When he tried to find out why, Hurdsman learned that the State had adopted a Rule limiting credit hours performed by incarcerated persons to 2,000 hours.

Hurdsman and Fleetwood's original complaint was filed on behalf of a class of prisoners who participated in the program. *Document No. 2.* The

original action also contained many claims against many people, both in their official and individual capacities. *Ibid.* Earlier Orders dismissed all plaintiffs except Hurdsman and Fleetwood, *Document No. 79,* and some of the claims, specifically those brought under the Federal Administrative Procedures Act and conspiracy claims, presumably under § 1985. *Document No. 91.* Remaining are Hurdsman and Fleetwood's claims against James Salkeld, Ronald Baker, Ronald Clark, Jonathan Bibb, Charles Covington, Gary Ferrel, Danny King, Dan McAlister, Harry Chaple, and Lee Danner in their individual and official capacities. Claims against Kenneth Lamkin are in his official capacity only. *Ibid.*

At a pretrial hearing, the Court questioned whether a § 1983 conspiracy claim lived on in light of the earlier Order dismissing Plaintiff's conspiracy claims. *Document No. 91.* That Order clearly dismissed claims brought under § 1985, but it is unclear whether § 1983 conspiracy claims were covered. *Ibid.* This distinction is relevant to the case continuing as to the two federal defendants, who may otherwise not be persons under § 1983. The Court concludes that § 1983 conspiracy claims were not dismissed, and therefore addresses them on the merits below.

Hurdsman and Fleetwood's remaining claims assert violations of federal and state rights, both statutory and constitutional. They argue that the State Committees infringed their Fifth and Fourteenth Amendment rights to procedural and substantive due process when the Committees adopted the Rule and applied it to Hurdsman. Plaintiffs presume any other prisoner-applicant would be treated the same way. Hurdsman and Fleetwood also allege that the Defendants violated state law because the Committee disregarded Arkansas law in promulgating/adopting the Rule. Another remaining claim is based on violations of the Fitzgerald Act, the federal statute governing apprenticeships. Finally, Hurdsman and Fleetwood argue that the credit-stripping Rule and its application to them violates their Fourteenth Amendment right to equal protection — they say the State offers no rational basis for the Rule that justifies the discrimination against them.

The State Defendants and federal Defendants Lamkin and Danner, moved for summary judgment. At the Court's invitation, *Document No. 156*, Hurdsman and Fleetwood have filed a cross-motion for summary judgment.

**2. The Legal Standard.** Based on the undisputed material facts now in the record and resolving disputed facts in favor of the non-movants, the

Court resolves all remaining claims. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if the evidence demonstrates that there is no genuine dispute on any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249. If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson*, 643 F.3d at 1042. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. No material facts, the Court concludes, are genuinely disputed.

**3.   The Undisputed Facts.** Hurdsman and Fleetwood began an electrician apprenticeship program at the Federal Correctional Institute at

Forrest City, Arkansas around 2003. *Document No. 143, at 2 ¶ 3.* The program was registered with the U.S. Department of Labor's Bureau of Apprenticeship Training, which sets nationwide standards for apprenticeships of all sorts. *Ibid.* The federal prison sponsored the journeyman's electrician apprenticeship program, and Kenneth Lamkin, a U.S. Department of Labor employee, signed the Apprenticeship Agreement that established the standards for the program. *Document No. 138-8.*

Hurdsman and Fleetwood took part in the program in hopes of obtaining an electrician's license and becoming productive citizens upon their release from prison. *Document Nos. 130-9, at 30-31 & 123-3, at 8.* And so both men, along with others, joined the apprenticeship program and completed more than 10,000 hours of work with the expectation that they would be eligible to sit for the State licensing test and become electricians.

Those supervising the apprenticeship program at the prison shared this expectation. *Document No. 141-9, at 59 & ABEE Mtg. Recording.* The publicly available rules of the Arkansas Board of Electrical Examiners said nothing about special rules for incarcerated individuals. *Document No. 130-2.* What's more, the prison's program was approved by the federal Bureau of

-6-

Apprenticeship Training, the authoritative, standard-setting entity for apprenticeships, with no embedded caveat that the prisoners' hours would be worth less. *Document No. 138-8.*

Cheyenne Palmer, one of Hurdsman's supervisors at FCI Forrest City, testified that a program worth only 2,000 hours would not be worth anyone's time. *Palmer Depo at 58, 64 & 74.* The program has effectively ceased because of the recently discovered barriers to qualified prisoners seeking licensure. *Ibid.*

Hurdsman and Fleetwood both received "Certificates of Apprenticeship Completion" on 5 February 2008, signed and certified by the U.S. Department of Labor. *Document Nos. 126-5 & 126-6.* Hurdsman was eager to complete the process of becoming an electrician. So Sabrina Martin, the Bureau of Prisons employee in charge of the electrical apprenticeship program at FCI Forrest City, asked U.S. Department of Labor employee Lee Danner what procedure the inmates would need to follow to get their licenses. *Document No. 130-9, at 81.* Danner referred Martin to Ronald L. Clark, an employee of the Arkansas Department of Labor, who emailed her that an apprentice who completes a program while incarcerated can only "receive 1 year experience

-7-

credit . . .. When the apprentice is released, he will find a job with an electrical

contractor . . . to complete the remaining 3-years." *Document No. 141-8, at 34.*

The e-mail contained no citation to or documentation of the relied-upon State

Rule. *Ibid.*

Hurdsman only found out about the State Electrical Apprenticeship

Committee Rule when he wrote to Governor Beebe asking for help. *Document*

*Nos. 157-12 & 141-3, at 2.* Amy Click, Counsel for Clemency and Corrections

for the Governor's Office, pointed Hurdsman to the State Electrical

Apprenticeship Committee Rule and stated that the Arkansas Department of

Labor would not sign a release for test completion form in his case. *Document*

*No. 157-13.* Click went on: "These rules were voted on by the State Electrical

Apprenticeship Committee, adopted by the Board of Electrical Examiners,

and are backed by the Department of Labor." *Ibid.* Hurdsman, though, was

still not given a copy of the State Electrical Apprenticeship Committee Rule

or any public Notice of Proposed Rulemaking by the Arkansas Board of

Electrical Examiners.

In spite of the discouraging messages from the Arkansas Department

of Labor and the Governor's office, Hurdsman sent his application to the

-8-

Arkansas Board of Electrical Examiners. *Document No. 138-4, at 79.* Fleetwood held his application, awaiting the outcome of Hurdsman's inquiries, because he assumed all incarcerated applicants would face the same challenges. Hurdsman secured two signed and notarized "Affidavits of Employment Experience" from his supervisors at the prison. *Document No. 138-4, at 82-83.* These affidavits confirmed that he had completed 10,250 hours of on-the-job-training. *Ibid.* Hurdsman submitted the affidavits with his U.S. DOL/Bureau of Apprenticeship Training "Certificate of Completion" and other qualifying documents included in the Arkansas Board of Electrical Examiners application form that is available online. *Ibid.*

Later that month, Hurdsman got a letter from Ronald Baker, Administrator of the Arkansas Board of Electrical Examiners and an employee of the Arkansas Department of Labor. *Document No. 136-2, at 15.* Baker's letter said that the Screening Committee had denied his application for failure to meet the qualifications and requirements established by Arkansas Board of Electrical Examiners regulations. *Ibid.* Baker's letter also informed Hurdsman that he had twenty days to appeal the Screening Committee's decision to the Arkansas Board of Electrical Examiners. *Ibid.* The letter did not mention the

State Electrical Apprenticeship Committee Rule that cut Hurdsman's hours; it instead pointed to the regulation that includes a "Release for Test/Completion" form. *Document Nos. 152-1 & 152-2.* No such form was provided with the letter, nor was the form available online with the rest of the Arkansas Board of Electrical Examiners application materials. *Document No. 141-7, at 66-67.* The "Release for Test" form was provided for the first time in discovery. *Document No. 130-1, at 11-12.*

Shortly after receiving Baker's letter, Hurdsman filed a formal appeal with the Arkansas Board of Electrical Examiners's Screening Committee and attached a "Supplemental Affidavit of Employment Experience" with a more detailed account of his work at FCI Forrest City. *Document Nos. 157-9 & 141-7, at 77.* Hurdsman also rallied Bureau of Prisons employees to support his application. *Document No. 130-8, at 59.* Rex Jones, the supervisor of educational, vocational, and college programs at the prison, reportedly called Baker and Clark during the next month in the presence of Hurdsman and Fleetwood to inquire just what qualifications Hurdsman had lacked.

Although the Arkansas Department of Labor employees had notice that Hurdsman was incarcerated, the next letter from Arkansas Board of Electrical

Examiners instructed him to bring his documents to their next meeting on 21 July 2009. *Document No. 141-3.* Hurdsman, of course, could not attend. FCI Forrest City's Warden sent three Bureau of Prisons staff members to the meeting to support the prison's electrician apprenticeship program. *Palmer Depo. at 58-59 & 72-74.* U.S. Department of Labor employee Danner also attended. *Document No. 157-9.*

During his comments on Hurdsman's application, Danner said that Hurdsman had written a "nasty letter" to the Governor and discounted the U.S. Department of Labor's establishment of the apprenticeship program at FCI Forrest City. *ABEE Meeting Recording at 25:22-31.* Danner spent a good deal of time comparing the federal Forrest City program to the state program at Riverside Vo-Tech in the Cummins Unit of the Arkansas Department of Correction. He spoke of the two programs as though they were identical. *ABEE Meeting Recording at 23:00-20.* Danner also spoke as though he were unaware that the federal prison met all of the same requirements as other Bureau of Apprenticeship Training-approved programs all across the country. *ABEE Meeting Recording at 23:00-26:35 & 27:05-28:40.* Palmer and Danner argued about the differences between the state and federal programs at length

-11-

during the hearing. *Ibid.* Palmer insisted that the Bureau of Labor's approval of the program distinguished it from the state prison Vo-Tech. *Ibid.*

Ultimately, the Board decided to uphold the decision of the Screening Committee — to limit Hurdsman's experience credit to 2000 hours. *Document No. 157-9, at 2.* The Board chairman, Gary Ferrel, moved to uphold the Screening Committee's decision, and that decision was approved by the Board. *Ibid.* Hurdsman never received any type of official decision in writing from the Arkansas Board of Electrical Examiners concerning his appeal. He first obtained details about the meeting from the Bureau of Prisons staff who attended; then he got the official minutes with a FOI request. According to those minutes, Hurdsman's application was denied for not meeting the educational requirements. *Document No. 157-9.*

Hurdsman finally received a copy of the 2007 State Electrical Apprenticeship Committee Rule after he wrote to Governor Beebe again. Jonathan Bibb, who worked for Salkeld, Baker, and Clark at the Arkansas Department of Labor, eventually emailed prison staff the minutes from the 2 November 2007 State Electrical Apprenticeship Committee meeting. *Danner Decl., Doc. 126-1, at 2.* These minutes show that the Committee members

-12-

voted on and approved the Rule limiting the experience credit for incarcerated individuals to 2,000 hours. *Document No. 138-5, at 17-19.* Member Harry Chaple submitted the Rule to the Committee, which included chairman Dan McAlister and Kenneth Lamkin. *Ibid.*

**4. The Disputed Facts.** Because Defendants and Plaintiffs have filed dueling motions for summary judgment, certain facts must be construed on particular claims in favor of the non-moving parties. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). Defendants' motion for summary judgment addresses all of the Plaintiffs' claims, so all related facts will be construed in favor of Hurdsman and Fleetwood. *Ibid.* To the extent that Hurdsman and Fleetwood's cross-motion for summary judgment raises sub-issues and newly disputed facts regarding the procedural-due-process claims, those facts are construed in favor of the Defendants.

**a. Facts Construed in Defendants' Favor.** Hurdsman could not attend the Board meeting because he was incarcerated. He had, though, submitted comprehensive written materials. They supported his application to take the test and his appeal of the initial denial. There is some debate over whether the prison officials represented Hurdsman's interests when they

attended the Arkansas Board of Electrical Examiners hearing. Prison staff members who appeared at the Board Meeting say they did not represent Hurdsman, but they did support his application and the FCI Forrest City apprenticeship program. Defendants say that the prison officials' participation in the hearing, without explaining their limited purpose, led the Board to believe Hurdsman's interests were represented. Considering all the circumstances, Defendants' belief was reasonable. And the Court construes this fact in Defendants' favor.

**b. Facts Construed in Plaintiffs' Favor.** The Rule was adopted by both State Committees without any public notice or comment period. There is no document that shows the program at FCI Forrest City received notice of the dramatic change that would adversely affect its apprentices. According to the publicly available rules and regulations, Hurdsman was in compliance and qualified to sit for the licensing exam when he made his application.

Correspondence with the Governor's office and the Board, including the hearing on Hurdsman's application, indicates the drastic reduction in his experience credit resulted from the application of a Rule limiting hours

performed by incarcerated persons to 2,000 hours.  At some point during the application process, Baker and Clark both told prison officials that Hurdsman needed a "Notice of Apprenticeship Committee Action—Release for Test/Completion" form, but when Jones said the prison would provide any needed documentation, the conversation indicated that Arkansas Department of Labor and Arkansas Board of Electrical Examiners would never approve inmates because of the State Electrical Apprenticeship Committee Rule and because they are "undesirable characters."  Later, three other USDOJ/Bureau of Apprenticeship Training employees (Cheyenne Palmer, Rhonda Haltiwanger, and Kim Taylor) made similar calls to Baker and Clark with the same results.  Defendants say that Hurdsman's application was rejected because he did not have a particular Release for Test form.  Taking the record in the light most favorable to Hurdsman, the lack of this form was not the real reason his application was rejected.

Although the Defendants argue that Danner was not a state actor, it is apparent from the recording of the meeting that Danner frequently attended the Arkansas Board of Electrical Examiners Board meetings, and he spoke as though he were a member or advisor.

**5. Defendants.** The Complaint lumps all the defendants together without distinguishing which claims are against each. As a threshold matter, the Court must dismiss some individual-capacity claims either because there is no evidence of individual involvement or because the claims are barred as a matter of law. Claims must be dismissed as to individuals who were not members of the Committee, not state employees, and not present at the meetings. In a § 1983 case, there must be a showing of action under color of state law to keep these private individuals in the suit, and the Plaintiffs have presented no evidence that links some Defendants to unlawful conduct. Mere service on a state licensing board, without more, is not unlawful conduct under color of state law. *West v. Atkins,* 487 U.S. 42, 49 (1988) (quotation omitted).

Ferrel and King were not members of the State Electrical Apprenticeship Committee, not public employees, and not present at the meeting when the Committee adopted the 2007 Rule. Rather, these two individuals were involved only when the appeal came before the Arkansas Board of Electrical Examiners. McAlister and Chaple were only involved in the State Electrical Apprenticeship Committee meeting and not the appeal. Therefore, claims

-16-

involving the adoption of the State Electrical Apprenticeship Committee Rule are dismissed as to Ferrel and King; and claims involving the Rule's application to Hurdsman are dismissed as to McAlister and Chaple.

### a. Federal Defendants

**Kenneth Lamkin.** Lamkin is a retired U.S. Department of Labor employee. He signed the Apprenticeship Agreement for the Forrest City inmates and attended the State Electrical Apprenticeship Committee meeting when the 2007 Rule was adopted. He retired before the Rule was applied to Hurdsman. Because of a service problem in the initial phase of the litigation, claims against Lamkin in his individual capacity are no longer part of this case. *Document No. 91.* A suit against Lamkin in his official capacity is a suit against the United States. Plaintiffs concede that sovereign immunity bars claims against the United States. *Document No. 157.* So the Court dismisses all remaining claims against Lamkin.

**Lee Danner.** Danner is a current U.S. Department of Labor employee. He received the initial licensing inquiries and referred prison staff and the Plaintiffs to the Arkansas Department of Labor. Although the terms of Hurdsman's Apprenticeship Agreement were clear and signed by Danner's

former colleague Lamkin, Danner said during Hurdsman's appeal that the FCI Forrest City program was "never designed to count for more than 2000 hours." *Recording of ABEE Mtg., at 23:00-20*  He said this even though the Department of Labor's Bureau of Apprenticeship Training had approved the program, like other free-world programs and unlike the state prison program. Danner's opinion was important to the State decision makers deciding the fate of Hurdsman's application.

When Danner attended the monthly Arkansas Board of Electrical Examiners meeting, he spoke as though he were an influential member and actively dissuaded the Board from accepting Hurdsman's application on appeal. *Recording of ABEE Mtg., at 23:00-28:40.*  It is fair to say that he acted in concert with the State employees to deny Hurdsman his rights. But can he be liable for damages?

For the same reasons damage claims against Lamkin in his official capacity are barred, so too are those against Danner in his official capacity. But claims against Danner in his individual capacity remain. Is Danner, in his individual capacity, a person under § 1983?

Yes.   Federal officers can be persons under § 1983 if they act under color

-18-

of state law.  Because Danner's identity "largely overlapp[ed]" with the Arkansas Committees that committed the alleged violations of law, he remains subject to liability for damages in addition to declaratory and injunctive relief.  *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 303 (2001); *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).  That is, he was a state actor in this context, and should be treated the same way as the Board members who were not state employees.

### b.    State Defendants

**Official-Capacity Claims Against State Defendants.**  *Ex parte Young*, 209 U.S. 123 (1908), allows suits against state officials for prospective injunctive and declaratory relief only.  Although money damages are barred by the Eleventh Amendment, injunctive or declaratory relief could be meaningful here, if only symbolically.  The primary purpose of the suit was to allow Hurdsman and Fleetwood to take the licensing test and prevent discrimination against other prisoners going forward.  Declaratory or injunctive relief might require a different policy toward prisoners. Official-capacity claims against the State Defendants therefore remain viable

as a matter of law.

**Individual-Capacity Claims Against State Defendants.**  Qualified immunity protects the State Defendants if their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (quotation omitted).  The qualified-immunity issues in this case are particularly complex because of the variety of defendants.  Some are State employees, to whom the doctrine clearly applies, others are private citizens who serve on state Boards that perform tasks related to the state function of licensing electricians.  Because Defendants represented by the Attorney General in this action were all either employed by the state or performing a state function, the Court assumes that they all can claim the common-law defense of qualified immunity.  This is not contested in the briefs.

The variety of claims also complicates the qualified-immunity analysis. This case comprises a multitude of federal claims as well as a related state-law claim.  The Court must therefore examine each claim to determine whether the Defendants deprived Hurdsman and Fleetwood of any clearly established right.  Defendants' liability extends only to conduct that violated a

-20-

constitutional or statutory right that was clearly established before they acted. Further, Defendants can only be held accountable if a reasonable person would have known his conduct violated clearly established rights. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Austell v. Sprenger*, 690 F.3d 929, 936 (8th Cir. 2012) (quotation omitted). This is a demanding legal standard.

### 6. Federal Claims

The following analysis addresses each of Hurdsman and Fleetwood's federal claims on the merits. The qualified-immunity question merges into whether Hurdsman and Fleetwood have viable federal claims on the merits. That is, part of determining whether the Defendants violated clearly established constitutional rights involves determining whether they violated the Constitution at all. *Ibid.* For various reasons, they did not.

**a. Fitzgerald Act.** Generally, money damages are barred by sovereign immunity for claims against the state, but the Plaintiffs argue that the Fitzgerald Act, 29 U.S.C. § 50 *et seq.*, creates a private right of action for apprentices in programs that do not adhere to certain practices, entitling them to damages. The Court has been skeptical and now concludes that no such

-21-

private right of action exists.  Neither side has cited any controlling authority

on this statute.  Plaintiffs' briefs analyze the Fitzgerald Act using *Cort v. Ash*'s

four-prong test.  422 U.S. 66 (1975).  The Court disagrees with Plaintiffs'

analysis; *Cort*, moreover, has been read narrowly, and its continued vitality

is in doubt.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979); *Furrer v.

Brown*, 62 F.3d 1092, 1100 (8th Cir. 1995); *Wisdom v. First Midwest Bank*, 167

F.3d 402, 407-09 (8th Cir. 1999).  In any event, the legislative history of the

Fitzgerald Act does not clearly show that Congress intended to imply or

create a cause of action.

      **b. Equal Protection.**  Hurdsman and Fleetwood contend that the

Rule discriminates against incarcerated people as a class in violation of their

right to equal protection.  Prisoners are not a suspect class, and an electrician's

license is not a fundamental right.  So Hurdsman and Fleetwood must show

that they were "treated differently by the government than similarly situated

persons and the different treatment was not rationally related to a legitimate

government objective."  *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th

Cir. 2006).  A "classification must be upheld against equal protection

challenge if there is any reasonably conceivable state of facts that could

provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).

Hurdsman and Fleetwood have not shown that they were similarly situated to free-world apprentices.  And the State has articulated a rational basis for the Rule.  Although there are some statements in the record that the prison was like a small city and that the prisoners got the same experience as free-world electricians, the deposition testimony as a whole undermines any claim that the experience was identical or similar enough to satisfy the licensing requirements. *Document No. 141-9, at 83 & 89*.  The Defendants adequately justified requiring experience outside prison walls by articulating several rational reasons for doing so—public health, safety, and welfare, in addition to the safety of the electricians themselves. *Document No. 132, at 18*.

It is not for the Court to second-guess the judgment of regulators with more knowledge about how an electrician ought to be trained, especially because public safety is at stake. *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 443 (8th Cir. 2007).  Because Hurdsman and Fleetwood have not shown that the Defendants' reasons are irrational or pretexual, none of the Defendants violated Plaintiffs' constitutional right to equal protection.

c. **Procedural Due Process.**  In their cross-motion for summary judgment, Hurdsman and Fleetwood argue that Defendants violated state procedural laws governing rulemaking and thereby violated their constitutional rights.  But a claim under § 1983 must involve a deprivation of a federal constitutional right or a federal statutory right.  Defendants' alleged failure to follow state procedural law did not necessarily deprive Hurdsman and Fleetwood of a constitutionally protected right.

The Due Process Clause of the Fourteenth Amendment encompasses three kinds of federal claims enforceable through 42 U.S.C. § 1983: (1) claims for the deprivation of certain specific rights contained in the Bill of Rights and made applicable to the States through incorporation; (2) claims under the substantive component of the Due Process Clause "that bars certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them;" and (3) claims under the procedural component of the Due Process Clause, which prohibits the deprivation of life, liberty, or property without fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (quotation omitted).  A Court encountering a procedural-due-process claim must first determine whether the plaintiff has been deprived of a liberty or

property interest that is constitutionally protected as a matter of substantive law. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541 (1985).

**Liberty Interest.** Hurdsman and Fleetwood claim the Defendants violated their liberty interest in pursuing their chosen profession. This would be true if the restrictions on the prison apprentices were not in service of a legitimate state interest—public health, safety, and welfare. "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition." *Dent v. West Virginia*, 129 U.S. 114, 121 (1889); *see also Truax v. Raich*, 239 U.S. 33, 41 (1915). "The liberty mentioned in [the Fourteenth Amendment] means . . . the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation." *Allgeyer v. Louisiana*, 165 U.S. 578, 589-90 (1897) (quotation omitted); *see also Replogle v. Little Rock*, 166 Ark. 617, 267 S.W. 353 (1924).

Hurdsman and Fleetwood are not forever banned from the electrical trade in Arkansas. They may be eligible to sit for licensing in other States

now. Both are still able to pursue their licenses by completing additional apprenticeship hours outside of prison. It is quite reasonable for a state board charged with licensing electricians to impose a longer post-incarceration oversight period before allowing convicted felons into the homes and businesses of the public. Even if Board members were only concerned with the sufficiency of the prisoners' training, as they say, this concern is enough to bring the regulation over the constitutional hurdle.

**Property Interest.** While liberty interests may be derived from the Due Process Clause of the Constitution or created by state law, property interests "are created . . . from an independent source such as state law. . .." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). To have a cognizable property interest in a right or a benefit, a person must have a "legitimate claim of entitlement to it." *Ibid.* A property interest arises when state law creates "expectations that are justifiable." *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 796 (1980) (quotation omitted). No property interest arises where the statutory claim to a benefit is "too ephemeral and insubstantial." *Ibid.*

"This is a highly context-specific inquiry decided on a case-by-case basis." *Austell*, 690 F.3d at 935. The result depends primarily on how much

-26-

discretion the law gives the decision-maker. *Ibid.* Where the statute or regulation gives the decision-maker unfettered discretion, there is no property right; conversely, a right exists where the decision-maker must closely adhere to statutory prescriptions. *Ibid.; compare Stauch v. City of Columbia Heights,* 212 F.3d 425, 429-30 (8th Cir. 2000), *with Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 719 (8th Cir. 1995).

Put simply, the federal Constitution did not require Arkansas, or any of the Defendants named in this action, to issue Hurdsman or Fleetwood an electrician's license. It only required due process to determine whether the predicate facts for a license existed.

> If a state law gives me the right to a certain outcome in the event of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist. This is not at all the same thing as saying that the federal Constitution guarantees me all the rights created or conferred upon me by state law. Such a doctrine would turn every state-law violation into a substantive-due-process claim, a result that would obliterate completely the distinction between state law and the federal Constitution.

*Bagley v. Rogerson,* 5 F.3d 325, 328 (8th Cir. 1993) (Richard S. Arnold, J.).

Here, the Board regulations set out the following applicable qualifications for obtaining a journeyman electrician's license:

**1. Applicants who completed an apprenticeship program.**
Applicants who have completed a 4-year electrical construction
apprenticeship program approved by the U.S. Department of
Labor, Bureau of Apprenticeship and Training shall have:

    a.    a "Notice of Apprenticeship Committee Action–
Released for Test/Completion" form from the
applicant's training program and approved by the
Arkansas Department of Workforce Education; or

    b.    if the applicant completed an apprenticeship program
in another state, certification from the Bureau of
Apprenticeship and Training or the state agency
responsible for oversight of apprenticeship programs
of completion.

    c.    The Board may approve an applicant without a
Released for Test form in extenuating circumstances.

*Administrative Regulations of the Arkansas Board of Electrical Examiners*,
010.13–012.C (2007). The regulations also provided for judicial review after
any appeal of an application is denied. *Administrative Regulations of the
Arkansas Board of Electrical Examiners*, 010.13-014. Hurdsman got a hearing
that complied with the regulations, even though he was not physically
present. The relevant facts were presented; and the Board still denied his
application. There was no violation of procedural due process. Because
satisfactory state procedures were provided, no procedural-due-process
deprivation occurred notwithstanding that Hurdsman sustained some injury
by not getting to take the test. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

**Alternative Holdings.**  The Defendants reasonably could also have concluded that Hurdsman had no constitutionally protected property interest in a license.  They could have come, in this murky legal area, to a similar decision about no liberty interest in taking the test.  And those conclusions entitle them to qualified immunity in any event.  *Austell*, 690 F.3d at 935; *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

Even if Hurdsman and Fleetwood had a liberty or property interest, they received all the process they were due under the Constitution.  Due process is a flexible concept — the essentials are notice and an opportunity to be heard.  *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976).  Fleetwood never applied to sit for the licensing exam, so he had no right to process.  Hurdsman received written notice of his application's rejection and of the process for appealing.  Hurdsman wrote to the Board, explaining the reasons his application should be accepted.  Written appeals are, depending on the situation, a fair opportunity to be heard.  Here, Hurdsman's incarceration kept him from attending the Board meeting.  But prison staff attended and participated in a vigorous and detailed conversation about the program at Forrest City and Hurdsman's application.  Defendants provided thus

provided a constitutionally adequate process. *Matthews*, 424 U.S. at 349.

**9. State law claim.** As discussed above, not every violation of state procedural law is a violation of procedural process due under the U.S. Constitution. Plaintiffs argue "that the state failed to follow its own procedural rules and thus failed to afford [them] the due process of law mandated by the Constitution. But . . . the Due Process Clause does not federalize state-law procedural requirements." *Kennedy v. Blankenship*, 100 F.3d 640 (8th Cir. 1996); *see also Hughes v. Lee County Dist. Court*, 9 F.3d 1366, 1367 (8th Cir. 1993).

Without an established liberty or property interest, Hurdsman and Fleetwood's allegations regarding state law violations are merely that — alleged violations of Arkansas law that do not invoke the protection of § 1983. This Court will therefore not exercise its jurisdiction further. 28 U.S.C. § 1367(c)(3); *Williams v. Hobbs*, 658 F.3d 842, 853 (8th Cir. 2011).

\*   \*   \*

All of Hurdsman and Fleetwood's federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state claim. It is dismissed without prejudice. The pending motion

-30-

in limine, *Document No. 137,* is denied as moot.

So Ordered.

D.P. Marshall Jr.
United States District Judge

27 March 2013